UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANIMAL PARTISAN, *Plaintiff*, v. FEDERAL BUREAU OF INVESTIGATION, *Defendant*. | Civil Action No. 23-1990 (SLS) Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

Animal Partisan, a nonprofit organization, brought this lawsuit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the Federal Bureau of Investigation (FBI) to release certain records regarding its involvement in two conferences. The FBI has since produced the requested records. What remains is a motion from Animal Partisan requesting $93,823.09 in attorneys' fees and costs. For the reasons below, the Court denies the motion.

### BACKGROUND

#### A.  Statutory Background

"Congress enacted FOIA in 1966 to grant a right of public access to governmental information 'long shielded unnecessarily from public view[.]'" *Martin v. Dep't of Justice*, 488 F.3d 446, 453 (D.C. Cir. 2007) (citing *EPA v. Mink*, 410 U.S. 73, 80 (1973), *superseded by statute*, Freedom of Information Act, Pub. L. No. 93–502, § 2(a), 88 Stat. 1563 (1973)). FOIA requires that "records and material in the possession of federal agencies be made available on demand to any member of the general public." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221 (1978); *see also* 5 U.S.C. § 552. It allows the public to "pierce the veil of administrative secrecy

and to open agency action to the light of public scrutiny." *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted)). Even though the Act was "broadly conceived," *EPA*, 410 U.S. at 80, it includes nine "carefully structured . . . exemptions," *NLRB*, 437 U.S. at 220–21. These exemptions demonstrate that the public's right to information is "'not absolute' and that disclosure of certain information 'may harm legitimate governmental or private interests.'" *Martin*, 488 F.3d at 453 (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). One such exemption, Exemption 7(A), applies to certain "records or information compiled for law enforcement purposes" if "the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). FOIA permits courts to award "reasonable attorney fees and other litigation costs reasonably incurred" in FOIA litigation "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).

  **B.**  **Factual and Procedural Background**

  Animal Partisan "is an animal rights organization dedicated to alleviating the suffering of animals used in agriculture and research through legal action." Compl. ¶ 5, ECF No. 1. "Part of this work includes monitoring the activities and operations of law enforcement agencies, like [the] Defendant, and how those law enforcement agencies conduct investigations related to animal rights activists." Pl.'s Mot. at 7, ECF No. 17. And obtaining records through FOIA is critical to the organization's work. *See* Declaration of William Craig Lowrey (Lowrey Decl.) ¶ 5, ECF No. 17-3. On October 27, 2022, Animal Partisan submitted a FOIA request for "numerous types of records including records showing the FBI's involvement in two conferences, [North American Meat Institute] NAMI's 2020, and 2022 Animal Care and Handling Conferences[.]" Compl. ¶ 9.

On November 2, 2022, the FBI indicated that it was closing the request because it was unable to locate responsive records. Lowrey Decl. ¶ 12. The FBI advised that "it would conduct an additional search if [Animal Partisan] could provide more information related to the subject of the request." *Id.* Animal Partisan then renewed its FOIA request and provided additional information. *Id.* ¶ 13. On November 15, 2022, the FBI issued its final determination:

> The material you requested is located in an investigative file which is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A). 5 U.S.C. § 552(b)(7)(A) exempts from disclosure:
>
>> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings . . .
>
> The records responsive to your request are law enforcement records; there is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information could reasonably be expected to interfere with enforcement proceedings. Therefore, your request is being administratively closed.

Lowrey Decl. ¶ 14.

On December 1, 2022, Animal Partisan appealed the FBI's final determination to the Department of Justice's Office of Information Policy (OIP). *Id.* ¶ 15. The appeal "challenged the FBI's failure to segregate portions of the records to which FOIA Exemption 7(A) did not apply, as well as the FBI's failure to balance its own privacy concerns with the public interest in disclosure." *Id.*; *see also* FOIA Appeal at 3, ECF No. 1-11. Animal Partisan also "argued the requested records were already made public through the FBI's presentation at the Meat Institute's conferences, so the records were not subject to exemption." *Id.*; *see also* FOIA Appeal at 5. On January 20, 2023, OIP affirmed the FBI's determination and closed the appeal. *See* Declaration of Michael G. Seidel (Seidel Decl.) ¶ 12, ECF No. 18-1. "OIP determined that the FBI properly withheld information in full because of its protection from disclosure under the FOIA pursuant to

3

5 U.S.C. § 552(b)(7)(A) and that it was reasonably foreseeable that disclosure of the information would harm the interests protected by this provision." *Id.*

Animal Partisan filed its Complaint on July 11, 2023, and the FBI filed its Answer on August 18, 2023. *See* Compl.; Answer, ECF No. 5. A month later, the FBI began "conferring with the record custodians to re-confirm the possible application of specific exemptions." Jt. Status Rep. (Sept. 15, 2023), ECF No. 7. On October 13, 2023, the FBI heard from its field office in Dallas "that there was no longer any harm related to investigatory actions associated with the FOIA release of information." Seidel Decl. ¶ 13. According to the FBI, "the investigative activity, necessitating the application of [Exemption (7)(A)], ceased on February 2, 2023[,] when prosecution was declined[,] and the internal investigation was closed." That did not change the fact that Exemption (7)(A) "was applicable at the time of the initial FOIA request and all following communications, including the administrative appeal to OIP, through the closure of the administrative case." *Id.* ¶ 13 n.5.

With the exemption no longer applicable, the FBI made "its 'first and final' record release" on January 31, 2024. Lowrey Decl. ¶ 21 (quoting Jt. Status Rep. (Feb. 12, 2024), ECF No. 9). Animal Partisan was "not satisfied with the adequacy of the FBI's search" and sent a letter identifying responsive records not yet released, including a "slideshow from the FBI's presentation at the Meat Institute's 2020 Animal Care and Handling Conference." *Id.* ¶ 22. On June 28, 2024, the FBI released additional responsive records, including the slideshow. *Id.* ¶ 23.

After the FBI released the final records, the Parties attempted to settle attorneys' fees and costs. Lowrey Decl. ¶ 25. But those negotiations failed, prompting the instant motion for $93,823.09 in attorneys' fees and costs. *See* Pl.'s Mot. at 38. The motion is fully briefed and ripe for resolution. *See* Def.'s Opp'n, ECF No. 18; Pl.'s Reply, ECF No. 19.

**LEGAL STANDARD**

Courts may award "reasonable attorney fees and other litigation costs reasonably incurred" in FOIA litigation. 5 U.S.C. § 552(4)(E)(i). A FOIA plaintiff must demonstrate both "eligibility" and "entitlement" to fees and costs. *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). Eligibility is a "threshold inquiry." *McKinley v. Fed. Hous. Financy Agency*, 174 F. Supp. 3d 220, 222 (D.D.C. 2012). To establish eligibility, a plaintiff must demonstrate that it "substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E). This requires a showing that the plaintiff obtained relief through a "judicial order, or an enforceable written agreement or consent decree," or by obtaining a "voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)–(II). The second prong of the statute requiring a voluntary or unilateral change in the agency's position is referred to as the "catalyst theory." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (citation omitted). "If . . . the court proceeds to the entitlement prong[,] . . . [it] considers a variety of factors to determine whether the plaintiff *should* receive fees." *Brayton*, 641 F.3d at 524 (emphasis in original). To obtain attorneys' fees under FOIA, a plaintiff must satisfy both prongs of the test. *See McKinley*, 739 F.3d at 710.

**DISCUSSION**

Without a court-ordered disclosure, Animal Partisan relies on the catalyst theory to establish its eligibility for attorneys' fees and costs. Animal Partisan argues that it "received the records at issue, but only after [it] filed its Complaint and compelled the agency to release the records." Pl.'s Mot. at 6. The FBI counters that "due to events external to this case, there was no longer any investigation-related harm that would result from the release of the information." Def.'s Opp'n at 8. Although Animal Partisan has established its eligibility for attorneys' fees and costs under the statute, the Court finds that it has not demonstrated that it is entitled to such fees.

A.   **Eligibility**

The "key question" under the catalyst theory is "whether 'the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation[.]'" *Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 4 (D.D.C. 2011) (cleaned up). Whether a plaintiff has sparked this type of change is "largely a question of causation." *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 46–47 (D.D.C. 2012) (cleaned up). "While the temporal relation between an FOIA action and the release of documents may be taken into account in determining the existence *vel non* of a causal nexus, timing, in itself or in conjunction with any other particular factor, does not establish causation as a matter of law." *Pub. Law Educ. Inst. v. U.S. Dep't of Justice,* 744 F.2d 181, 184 n. 5 (D.C. Cir. 1984). Instead, when "disclosure is triggered by events unrelated to the pending lawsuit, the causal nexus is missing, and the requester cannot be deemed a 'prevailing party[.]'" *Citizens for Resp. & Ethics in Washington v. Dep't of Justice*, 83 F. Supp. 3d 297, 303 (D.D.C. 2015) (noting that this "prevent[s] [the] plaintiffs from being the beneficiaries of purely extrinsic factors").

Animal Partisan argues that its lawsuit was the catalyst to the agency producing documents. Pl.'s Mot. at 17. The agency instead points to events unrelated to the lawsuit that triggered disclosure—*i.e.*, the declination of the relevant prosecution that removed the investigation-related harm that would result from release of the information. *See id.* at 17–18. At first blush, the agency's argument seems reasonable. If, in fact, the relevant prosecution was declined after the filing of the lawsuit, it would explain the agency's change in position regarding disclosure. But the record does not bear this out.

The agency's investigative activity "ceased on February 2, 2023," *before* commencement of this lawsuit, "when prosecution was declined[] and the internal investigation was closed." *See*

Seidel Dec. ¶ 13 n. 5. For five months, the agency took no steps to revisit its application of Exemption 7(A). Animal Partisan then filed its Complaint on July 11, 2023. *See* Compl. A month later, the FBI filed its Answer on August 22, 2023. The Court then ordered the Parties to meet and confer, and the FBI reached out to the relevant custodians to consider whether the exemption was still valid. *See* Jt. Status Rep. at 1 (Sept. 15, 2023), ECF No. 7 (The "Federal Bureau of Investigation . . . is currently conferring with the record custodians to re-confirm the possible application of specific exemptions."). And on October 12, 2023, the agency learned from the Dallas Field Office "that there was no longer any harm related to investigatory actions associated with the FOIA release of information." Seidel Decl. ¶ 13. The FBI then released documents on January 23, 2024. *Id.* ¶ 14. On this record, the Court finds that the Plaintiff's lawsuit "substantially caused the requested records to be released," because it was "reasonably necessary" to prompt the FBI to reconsider the application of Exemption 7(A). *Burka v. U.S. Dep't of Health and Human Serv's.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998); *see also Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't. of Justice*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) (explaining that "reliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close") (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 870 (D.C. Cir. 1980)).

The agency's sole response is that the Plaintiff should have submitted a new FOIA request, which "would have resulted in the same determination, without the need for litigation." Seidel Decl. ¶ 28; *see also id.* ¶ 29. But "the mere fact that a FOIA requester might have ultimately received the documents in question in the absence of litigation is not a sufficient basis for a finding that it has not substantially prevailed[.]" *Fund for Constitutional Gov't. v. Nat'l Archives & Record Serv.,* 656 F.2d 856, 871 (D.C. Cir. 1981). And the agency itself directed the Plaintiff to file a lawsuit "if [it was] dissatisfied with [the] action on [its administrative] appeal." OIP Determination

7

at 1, ECF No. 1-12. Animal Partisan simply followed that instruction. Because its lawsuit caused release of the documents, Animal Partisan is eligible for attorneys' fees and costs under FOIA.

### B.     Entitlement

If a Court finds that a plaintiff is eligible for fees, it must consider four factors to determine whether it is entitled to fees: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013). "Although these factors must be balanced, failure to satisfy the fourth element may foreclose a claim for attorney fees." *Summers v. U.S. Dep't of Justice*, 477 F. Supp. 2d 56, 63 (D.D.C. 2007) (citing *Chesapeake Bay Found., Inc. v Dep't of Agric.*, 11 F.3d 211, 216–17 (D.C. Cir. 1993)). The "sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992). Weighing the four factors, the Court finds that Animal Partisan is not entitled to attorneys' fees and costs.

#### 1.     Public Benefit

In assessing the public benefit factor, a court must consider "both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). The "effect of the litigation inquiry" asks "simply whether the litigation caused the release of requested documents, without which the requester cannot be said to have substantially prevailed." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016). And to have "potential public value" the request "must have at least a modest probability of generating useful new information about a matter of public concern." *Id.* The public benefit favors the plaintiff "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir.

1979) (cleaned up). This is an *ex ante* inquiry. *See Morley*, 810 F.3d at 844 ("Lest there be any uncertainty . . . the public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest[.]").

Having already decided that the litigation caused the release of the requested documents, *see supra*, at 6–7, the Court will consider the potential public value of the records obtained. Animal Partisan sought records related to the FBI's involvement in two conferences held by the North American Meat Institute, "a trade association that represents companies that process 95 percent of beef, pork, veal and 70 percent of turkey products in the United States." Compl. ¶¶ 2–3. Curiously, both Parties focus on the *ex post* benefits (or lack thereof) of the records obtained, *see* Pl.s' Mot. at 25–27; Def's Opp'n at 13–15, even though the inquiry is *ex ante*, *see Hall & Assocs. v. EPA*, 703 F. Supp. 3d 62, 78 (D.D.C. 2023) (The *ex-ante* "inquiry turns on the facts as they existed—and as they were known to the FOIA requester and other members of the public—at the time the FOIA requester faced the decision of whether to bring suit.").

Based on the record before the Court, the information obtained appears only marginally "likely to add to the fund of information that citizens may use in making vital political choices." *Fenster*, 617 F.2d at 744. Although "[m]embers of the public remain highly interested in animal welfare within the animal agriculture and research industries, as well as the policing of animal rights activism," Lowrey Decl. ¶ 6, many of the records sought were likely already in the public domain because the conferences were external, *see Tax Analysts*, 965 F.2d at 1094 (noting that public benefit is "less than overwhelming" where "the public had the benefit of access to all or most of this information"). And the records sought do not seem to concern any FBI activity

9

regarding the investigation and prosecution of animal rights activists. *See* Compl. ¶ 9. On balance, the public benefit factor only slightly favors Animal Partisan.

### 2. Commercial Benefit & Interest in the Information

The second factor considers whether the FOIA plaintiff derived a public benefit from obtaining the records, while the third factor looks at the nature of the plaintiff's interest in the records. These factors "are closely related and often considered together." *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 530 F. Supp. 2d 198, 201 (D.D.C. 2008). "Under the second criterion a court would usually allow recovery of fees where the complainant was indigent or a nonprofit public interest group . . . but would not if it was a large corporate interest." *Fenster*, 617 F.2d at 742 n. 4 (quoting S. Rep. No. 93–854, at 19). Under the third factor, "a court would generally award fees if the complainant's interest in the information sought was scholarly or journalistic or public-interest oriented." *Fenster*, 617 F.2d at 742 n. 4 (quoting S. Rep. No. 93–854, at 19).

Animal Partisan is a nonpartisan public interest group that sought these records "to monitor [the FBI's] participation in conferences and inform the public of its ongoing activities and operations related to investigating and overcharging animal rights activists as 'domestic terrorists.'" Pl.'s Mot. at 28. As part of these efforts, it publicized the obtained records via blog posts on its website and on social media posts. *See* Lowrey Decl. ¶ 27. And these records have been cited in articles published by other media organizations domestically and abroad. *See id.* ¶¶ 28–29. Thus, the second and third factors favor Animal Partisan.

### 3. Reasonableness of the Agency's Conduct

Finally, a court must determine whether the government had a reasonable basis for withholding the information. In making this determination, a court must consider (1) whether the agency's opposition to disclosure had a reasonable or colorable basis in law, and (2) whether the

agency was recalcitrant in its opposition or obdurate in its behavior. *Elect. Priv. Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 45 (D.D.C. 2016). "Under either factor, the agency carries the burden of showing it behaved reasonably." *Id.*; *see also Judicial Watch, Inc. v. Dep't of Justice*, 878 F. Supp. 2d 225, 237 (D.D.C. 2012). "The question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *EPIC*, 218 F. Supp. 3d at 45–46 (quoting *Davy*, 550 F.3d at 1163).

  Starting with the reasonableness of the agency's opposition to disclosure, the FBI argues that it reasonably withheld the relevant records under Exemption 7(A). *See* Def.'s Opp'n at 16. It points out that the exemption "was applicable at the time of the initial FOIA request and all following communications, including the administrative appeal to OIP, through the closure of the administrative case." Seidel Decl. ¶ 13 n.5. The Court agrees. *See CREW*, 746 F.3d at 1098 ("[A]n ongoing criminal investigation typically triggers Exemption 7(A)."); *see also Mullen v. U.S. Army Crim. Investigation Command*, No. 1:10-cv-262, 2012 WL 2681300, at *10 (E.D. Va. July 6, 2012) ("[T]he existence of an ongoing investigation" is a reasonable basis in law to withhold documents, especially if the "Defendant demonstrated responsiveness to the FOIA request once the investigation . . . concluded.").

  Animal Partisan counters that the agency improperly applied Exemption 7(A) because it "failed to explain how responsive records would interfere with enforcement proceedings and, instead, only provided the text of the statutory language and its own legal conclusions." Pl.'s Mot. at 30. But the FBI's failure to provide these particulars does not render its decision unreasonable. *See, e.g.*, *United America Financial, Inc. v. Potter*, 770 F. Supp. 2d 252, 258 (D.D.C. 2011) (finding the government's reliance on a FOIA exemption reasonable even though "it ultimately

failed to make the required specific and particularized showing that disclosing the identities of these employees would result in harm or harassment" because "[t]he claim was [still] based on sound legal theory"). Animal Partisan also claims that the FBI "failed to segregate and release responsive non-exempt records." Pl.'s Mot. at 31 (citing to *Elec. Priv. Info. Ctr. v. U.S. Dept. of Homeland Sec.*, 892 F. Supp. 2d 28 (D.D.C. 2012)). But since the Parties "never engaged in any substantive motions practice," *Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50, 67 (D.D.C. 2019), the Court cannot assess the strength of this contention, *see, e.g.*, *Los Padres ForestWatch v. U.S. Forest Serv.*, No. 22-cv-3702, 2025 WL 925376, at *10 (D.D.C. Mar. 18, 2025).[1] Ultimately, on this record, the agency's reliance on Exemption 7(A) appears reasonable. *See LaSalle Extension Univ. v. Fed. Trade Comm'n,* 627 F.2d 481, 486 (D.C. Cir. 1980) (noting that to "rebut a claim of Government unreasonableness or obduracy, the Government need not prove that the information was in fact exempt, only that the Government had a reasonable basis in law for concluding that the information in issue was exempt").

Turning to the second factor, the FBI was neither recalcitrant in its opposition nor obdurate in its behavior. Indeed, as the Plaintiff concedes, once this lawsuit was commenced, the FBI promptly turned over the requested records. *See* Lowrey Decl. ¶¶ 21–24. And when the Plaintiff raised adequacy concerns about the agency's initial search, the FBI swiftly agreed to a supplemental search and produced the additional information. *Id.* ¶ 23. "[T]his is not a case in which the government stubbornly refused to accede to a valid claim." *Peter S. Herrick's Customs*

---

[1] Animal Partisan cites *Elec. Priv. Info. Ctr. v. U.S. Dept. of Homeland Sec.*, 892 F. Supp. 2d 28, 53 (D.D.C. 2012), to support its segregability argument. There, the court found that the government did not have a colorable basis in law for withholding the requested documents because its only explanation for producing the documents after the plaintiff filed suit was that it had "conduct[ed] another round of review." *Id.* That is a far cry from this case where the government had a reasonable basis to withhold the requested information under Exemption 7(A) until the underlying investigation came to an end.

*& Int'l Trade Newsl. v. Customs & Border Prot.*, No. 04-cv-0377, 2006 WL 3060012, at *10 (D.D.C. Oct. 26, 2006). And there is no evidence of bad faith. *See Los Padres ForestWatch*, 2025 WL 925376, at *10 ("Agencies should not be penalized or disincentivized from voluntarily and promptly revisiting the adequacy of their efforts after litigation has commenced, at least where there is no evidence of bad faith or indifference."). In the end, the FBI turned over the responsive records within three months of hearing from its field office about the relevant prosecution and determining the exemption no longer applied. *Compare with Potter*, 770 F. Supp. 2d at 258 (finding "no evidence of obdurate behavior" though "litigation stretched on for a period of almost four years" (internal quotation marks omitted)).

Because the FBI had a reasonable basis for withholding the relevant records and did not engage in obdurate behavior, the fourth factor cuts in its favor.

\* \* \*

When deciding entitlement to fees and costs, no one factor is dispositive. *See Davy*, 550 F.3d at 1159. Here, the first, second, and third factors weigh in favor of an award of fees and costs, and the fourth weighs against one. Considering these competing factors, the Court finds that Animal Partisan is not entitled to attorneys' fees and costs. Although three of the four factors favor Animal Partisan, the first factor only slightly favors the organization. And the fourth factor heavily favors the agency, as it had a reasonable basis for initially withholding the relevant records under Exemption 7(A) and acted swiftly to turn over the records once it learned that the underlying law enforcement investigation had ceased. *See supra*, at 11–14. In these circumstances, the Court finds that an award of fees and costs is not "necessary to implement FOIA" and that the cost of litigating a case like this one would not "dissuade" a FOIA applicant "who ha[s] been denied information from invoking [its] right to judicial review." *Davy*, 550 F.3d at 1158 (quoting *Nationwide Bldg.*

*Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977)); *see, e.g.*, *Morley*, 894 F.3d at 396 (finding no entitlement to fees where "factor four heavily favor[ed] the agency and the other three factors only slightly favor[ed]" the plaintiff); *Assassination Archives and Research Center, Inc. v. CIA*, No. 17-cv-160, 2019 WL 1491982, at *7 (D.D.C. Apr. 4, 2019) (finding the plaintiff was not entitled to attorneys' fees where the "first three factors may weigh in [the plaintiff's] favor, but . . . the fourth factor weighs strongly in the [defendant's] favor").[2]

## CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's Motion for attorneys' fees and costs, ECF No. 17.

A separate order will issue.

                                                                         _____
                                                                         SPARKLE L. SOOKNANAN
                                                                         United States District Judge

Date:   June 30, 2025

---

[2] Although the Court need not consider whether it should exercise its discretion to award reasonable attorneys' fees and costs, it is dubious of the reasonableness of Animal Partisan's fees and costs. Animal Partisan seeks $93,823.09 for a relatively straightforward FOIA case, and almost one-third of that amount represents "fees-on-fees," *i.e.*, attorneys' fees to litigate this very motion.